IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GUY CLARK; LINDA CORWIN;
CRAIG CORWIN; WESLEY HANCHETT;
RICHARD JONES; MICHAEL WRIGH; and
SAN JUAN AGRICULTURAL WATER USERS ASSOCIATION,

    Plaintiffs,

v.                                                                       Civ. No. 21-1091 KG/SCY

DEB HAALAND, in her official capacity as
Secretary of the Interior;
CAMILLE C. TOUTON, in her official capacity as
Deputy Commissioner,
United States Bureau of Reclamation;
MARTHA WILLIAMS, in her official capacity as
Principal Deputy Director, U.S. Fish & Wildlife Service;
DR. RUDY SHEBALA, in his official capacity as
Executive Director, Navajo Nation Division of Natural Resources;
DAVID ZELLER, in his official capacity as head of
Navajo Indian Agricultural Products Industries;
MIKE HAMMAN, in his official capacity as
State Engineer of the State of New Mexico; and
ROLF SCHMIDT-PETERSON, in his official capacity as
Director of the New Mexico Interstate Stream Commission,

    Defendants.[1]

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on three separate but related Motions to Dismiss: 1) Defendants John D'Antonio's and Rolf Schmidt-Peterson's Motion to Dismiss for Failure to State a Claim and for Eleventh Amendment Immunity (Doc. 14) (State MTD), which is fully briefed (Docs. 42, 48); 2) the United States' Motion to Dismiss (Doc. 15) (USA MTD), which is

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Mike Hamman, as the current State Engineer of the State of New Mexico, is automatically substituted for John D'Antonio, the predecessor New Mexico State Engineer.

fully briefed (Docs. 42, 46); and 3) Dr. Rudy Shebala's and Dave Zeller's Motion for Dismissal on the Ground of Sovereign Immunity (Doc. 16) (Navajo MTD), which is fully briefed (Docs. 42, 48).[2] Having reviewed the briefing and applicable law, and being otherwise fully advised, the Court grants the Motions to Dismiss (Docs. 14, 15, 16).

I. BACKGROUND[3]

   a. *The Complaint*

Plaintiffs are residential users of water in Bernalillo, Sandoval, and San Juan Counties. (Doc. 1) at ¶¶ 13-17. One Plaintiff relies on a domestic well, *id.* at ¶ 13, while the others rely on municipal water sources or water supplied by various tributaries, *id.* at ¶¶ 14-17. The Plaintiffs claim that the Defendants, all sued in their official capacity only, *id.* at ¶ 12, "have not complied with or enforced" myriad federal laws, *id.* at ¶ 58.[4]

---

[2] Plaintiff San Juan Agricultural Water Users Association was previously dismissed without prejudice. (Doc. 51). The remaining Plaintiffs, Guy Clark, Linda Corwin, Craig Corwin, Wesley Hanchett, Richard Jones, and Michael Wright (collectively, Plaintiffs) filed one collective Response to all three Motions to Dismiss (Doc. 42) (Response).

[3] The facts recited in this section come from the Complaint (Doc. 1) and are presumed true for purposes of this Memorandum Opinion and Order.

[4] Cited statutes include: the Reclamation Act of 1902 and its Beneficial Use Requirement, 43 U.S.C. §§ 372, 383, N.M. CONST. art. XVI, § 3, NMSA 1978, § 72-1-2, (Doc. 1) at ¶¶ 19-23; the Practicably Irrigable Acreage (PIA) Standard for Irrigation Projects, stemming from *Arizona v. California*, 373 U.S. 546 (1963), *Arizona v. California*, 460 U.S. 605 (1983), and *Wyoming v. United States*, 492 U.S. 406 (1989), (Doc. 1) at ¶¶ 24-30; the Minimum Needs Doctrine, established by *United States v. New Mexico*, 438 U.S. 696, 700-01 (1978), (Doc. 1) at ¶ 31; the Colorado River Compacts, including the Colorado River Compact of 1922, 42 Stat. 171, NMSA 1978, § 72-15-5, and the Upper Colorado River Basin Compact of 1948, 63 Stat. 31, NMSA 1978, § 72-15-26, (Doc. 1) at ¶¶ 32-36; the McCarran Amendment, 43 U.S.C. § 666, which waives the United States' sovereign immunity and consents to being a party defendant in any suit for the adjudication and administration of water rights, (Doc. 1) at ¶¶ 37-39; Bureau of Reclamation (BOR) projects and their enabling legislation, including the Navajo Dam, Navajo Reservoir, and Navajo Indian Irrigation Project (NIIP), 76 Stat. 96, (Doc. 1) at ¶¶ 40-45; the San Juan-Chama Project, another BOR project authorized at 76 Stat. at 97-99, (Doc. 1) at ¶ 46; the Animas-La Plata Project, another BOR projected, (Doc. 1) at ¶¶ 47-50; the Omnibus Public Land Management Act of 2009, which expressly directed the Secretary to "comply with each law of

Plaintiffs further assert that the "present controversy arises in part because of certain state court rulings, including *State ex rel. State Engineer v. United States*, 2018-NMCA-053, 425 P.3d 723." (Doc. 1) at ¶ 62.

Indeed, Plaintiffs' Complaint is predicated on purportedly erroneous rulings of federal law made by the state appellate court.[5] By way of example, the New Mexico Court of Appeals allegedly held:

> that NIIP is not a BOR project, [2018-NMCA-053,] ¶ 18; that NIIP is not subject to the beneficial use requirement, or the PIA standard, ¶¶ 24-26, 30; that Congress created water rights by authorizing the construction of NIIP, ¶ 32; that the state's water laws and regulations are pre-empted by federal law, ¶¶ 10, 13, 14, 16; and that a state court can adjudicate water rights in interstate rivers without considering global warming, lack of available water, endangered species, or other federal reserved water rights, ¶ 40.

(Doc. 1) at ¶ 62. Based on these and other alleged errors, Plaintiffs contend "[a]n irreconcilable conflict between state and federal law now exists," such that this Court should "issue declaratory judgments to resolve the conflicts." (Doc. 1) at ¶ 63. Notably, Plaintiffs assert they were "not served with process, not parties to the [state] case, and . . . had no opportunity to litigate the issues on their merits, and therefore they are not bound [by the state court's judgment] as a matter of res judicata or collateral estoppel." *Id.* at ¶ 66.

Plaintiffs claim that "[t]hese state court rulings overthrow the first principles of federal water law, so they must be corrected by the federal courts, which have the ability to issue

---

the Federal Government relating to the protection of the environment, 123 Stat. 991, § 10303 (Mar. 30, 2009), (Doc. 1) at ¶ 51; the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, which provides habitat for several endangered species in the San Juan River, (Doc. 1) at ¶¶ 52-53; and "other federal laws for the protection of the environment," including the Clean Water Act, 86 Stat. 816 (Oct. 18, 1972), the Safe Drinking Water Act, 88 Stat. 1660 (Dec. 16, 1974), and the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, (Doc. 1) at ¶¶ 54-27.

[5] This Court takes no position and makes no pronouncements with respect to the state court's decision. The purported errors described in the remainder of this section come entirely from Plaintiffs' allegations in the Complaint and do not constitute the opinion of this Court.

3

authoritative decision on questions of federal law." *Id.* at ¶ 68. To that end, Plaintiffs ask this Court to make declaratory judgments "on the straightforward points of federal law which apply to the defendants."[6] *Id.* at ¶ 69.

With respect to the state court case, *State ex rel. State Engineer v. United States*, 2018-NMCA-053, Plaintiffs provide a fairly detailed timeline of events and, they argue, evidence of judicial bias. *Id.* at ¶¶ 77-90. Plaintiffs contend the appellate opinion, which constitutes the law of the land in New Mexico at this time, "contradicts, nullifies and abrogates federal laws on water as set forth in federal statutes and the decisions of the United States Supreme Court." *Id.* at ¶ 91.

Plaintiffs appear to make the following substantive claims:

1. they "are being subjected to ongoing deprivations of their fundamental rights of due process under the federal Constitution," *id.* at ¶ 92, and the Office of the State Engineer told a state court judge in the underlying adjudication that it would take 200 (two hundred) more years to complete the adjudication, which "is a denial of the right to be heard at a meaningful time in a meaningful manner," *id.* at ¶ 93;

---

[6] According to Plaintiffs, these "points include but are not limited to": 1) the Navajo Dam, Navajo Reservoir, NIIP, the San Juan-Chama Project, and the Animas-La Plata Project are BOR projects subject to the beneficial use requirement set forth in section 8 of the Reclamation Act and *Jicarilla Apache Tribe v. United States*; 2) the PIA standard applies to NIIP and all other irrigation projects; 3) PIA is the measure of *Winters* rights for the Navajo Nation; 4) the minimum needs doctrine applies to federal reserved rights claimed for the Navajo Nation; 5) the Colorado River Storage Act and the NIIP Act do not create water rights. They simply authorize the construction of waterworks like dams, irrigation projects, canals, and reservoirs; 6) federal law does not follow the homeland theory espoused in *In re General Adjudication of All Rights To Use Water in Gila River System & Source (Gila V)*, 35 P.3d 68 (Ariz. 2001); and 7) state and federal courts cannot ignore federal environmental laws when they adjudicate rivers. (Doc. 1) at ¶ 69.

2. they have been denied due process by the federal, state, and Navajo Nation governments based on "constitutionally inadequate" service of process in the "Expedited Inter Se, Case No. AB-07-1," which is itself "a vehicle for impairing defendants' due process rights," *id.* at ¶ 95;

3. the federal, state, and Navajo Nation governments "worked in concert . . . to nullify . . . statutory and constitutional requirements" related to a hydrographic survey for the area, and thus intentionally deprived the Plaintiffs of constitutionally adequate notice, *id.* at ¶¶ 96-100;

4. the state judge "refused to allow local water owners to file an answer and counterclaim" in the Expedited Inter Se case, and thus "denied local owners a meaningful opportunity to present and prove their side of the case at a meaningful time," *id.* at ¶ 101;

5. the stream adjudication process impairs Plaintiffs' water rights, which are property rights and constitutional rights under New Mexico law, *id.* at ¶¶ 103-104;

6. the state court deprived Plaintiffs of their "federal constitutional right to impartial judges," *id.* at ¶ 105, based on the judge's prior connection with the Navajo Nation and the judge's child being paid for the state for legal work on water cases, *id.* at ¶¶ 106-118; the specially appointed appellate judge not being authorized by the New Mexico Constitution to serve on the case, *id.* at ¶¶ 119-120; the specially appointed appellate judge working as a lawyer and investigator for the State on other matters, *id.* at ¶¶ 121-129; and the underlying state court judge's *ex parte* contacts with the Office of the State Engineer, *id.* at ¶ 135;

7. the Plaintiffs' First Amendment rights have been impaired by attorney discipline proceedings against their now-former-counsel, Victor Marshall, based on representations he

made regarding the aforementioned state court judges and their purported conflicts of interest, *id.* at ¶¶ 130-133;

  8. the Plaintiffs' due process rights have been impaired by the attorney disciplinary board's refusal to consider after-acquired evidence in the proceedings against Plaintiffs' now-former counsel, *id.* at ¶ 134;

  9. the Plaintiffs have been denied equal protection of the law because the Expedited Inter Se proceeding "has . . . given favorable and expedited treatment" to one litigant, the Navajo Nation, "at the expense of water owners who hold valid water rights," *id.* at ¶ 136; and

  10. the Plaintiffs have been denied substantive due process because they "will not be heard in a reasonably foreseeable time" and the state, federal, and Navajo Nation governments

> have worked together for the following invidious purposes: to prevent local water owners from ever being heard; to evade and violate all of the water laws set forth above; and to nullify the Colorado Compacts by allowing the Navajo Nation to export San Juan River water from New Mexico to other states, while charging New Mexico's compact share for water that is actually used in other states.

*Id.* at ¶ 138.

Plaintiffs then reiterate their request for declaratory judgment, as outlined above, and purportedly reserve the right to later seek money damages.

 b. *The Motions to Dismiss*

The Defendants filed three separate motions to dismiss: the State MTD, the USA MTD, and the Navajo MTD. For slightly different reasons, each motion asserts that the individual defendants are protected by various immunity doctrines that divest this Court of jurisdiction.

The State MTD seeks dismissal pursuant to Eleventh Amendment Immunity on the basis that this official-capacity suit does not allege the State Engineer (through Hamman) or the Interstate Stream Commission (through Schmidt-Peterson) has violated federal law or will

continue to violate federal law. (Doc. 14) at 7-9. Additionally, the State MTD seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that Plaintiffs failed to state a claim against Hamman or Schmidt-Peterson. *Id.*

The USA MTD seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction on the basis of sovereign immunity. (Doc. 15). Specifically, the USA MTD asserts that none of the statutes cited by Plaintiffs expressly waive the sovereign immunity of the United States for this case, and the McCarran Amendment does not apply because this case does not constitute a "comprehensive adjudication of water rights[.]" *Id.* at 4.

The Navajo MTD also seeks dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, based on tribal sovereign immunity. (Doc. 16). The Navajo MTD argues first that the Plaintiffs fail to establish any waiver of immunity with respect to Dr. Shebala or Mr. Zeller, and second that the claims would in fact run against the Navajo Nation itself, not the individuals in their official capacity, and are therefore further barred by sovereign immunity. *Id.* at 3-4. Finally, the Navajo MTD asserts the McCarran Amendment does not apply to tribes and does not waive tribal immunity. *Id.* at 4.

By way of response, Plaintiffs argue that the three motions conflate jurisdiction with sovereign immunity, and assert subject matter jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction, because the Complaint alleges violations of "numerous federal statutes and cases[.]" (Doc. 42) at 2. Plaintiffs contend the Complaint falls within the *Ex parte Young* doctrine, which authorizes suits against public officials who "are violating and failing to enforce numerous federal laws relating to water."[7] *Id.* With respect to the State MTD, Plaintiffs counter that the Complaint asserts violations of federal law and seeks prospective relief, falling squarely

---

[7] *See Ex parte Young*, 209 U.S. 123 (1908).

within *Ex Parte Young*. *Id.* at 3-4. As for the Navajo MTD, Plaintiffs argue the McCarran Amendment, cited statutes, and *U.S. v. District Court in and for Eagle County, Colo.*, 401 U.S. 520 (1971), all waive tribal immunity. (Doc. 42) at 4. Finally, with respect to the USA MTD, Plaintiffs assert that this case falls within the McCarran Amendment's waiver of immunity as a case involving the "administration of water rights." *Id.* at 5 (emphasis removed).

After arguing about waiver of immunity, Plaintiffs dedicate the remainder of their Response to pointing out the "erroneous opinion issued by the New Mexico Court of Appeals in April 2018." *Id.* at 5. Plaintiffs contend they were "forced to file this declaratory judgment complaint in federal court to reestablish the primacy of federal law." *Id.* The thrust of Plaintiffs' argument remains that "the [state appellate] opinion has created a clash of authority between state and federal courts, where the result depends on the courthouse." *Id.* at 8.

c. *Supplemental Briefing*

The Court requested, and the parties submitted, supplemental briefing on whether the *Rooker-Feldman* doctrine applies to this case as a collateral attack on the New Mexico Court of Appeals' ruling in *State ex rel. State Engineer v. United States*, 2018-NMCA-053, 425 P.3d 723. (Doc. 52). The *Rooker-Feldman* doctrine generally "precludes lower federal courts 'from effectively exercising appellate jurisdiction over claims actually decided by a state court and claims inextricably intertwined with a prior state-court judgment.'" *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010) (quoting *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006)).

However, because the Court grants each of the Motions to Dismiss on the basis of sovereign immunity, the Court does not analyze whether or to what extent *Rooker-Feldman* applies to this case.

8

II.     STANDARDS OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard does not require "detailed factual allegations," but it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When ruling on a 12(b)(6) motion, the Court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723 (quoting *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)). However, the Court need not accept the truth of any legal conclusions. *Iqbal*, 556 U.S. at 678.

Federal Rule of Civil Procedure 12(b)(1) allows a party to contest a federal court's jurisdiction over the subject matter of a claim by motion. Fed. R. Civ. P. 12(b)(1). The party invoking federal court's jurisdiction bears the burden of establishing that jurisdiction exists. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974); *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014). "[C]onclusory allegations of jurisdiction are insufficient." *Harris v. PBC NBADL, LLC*, 444 Fed. Appx. 300, 301 (10th Cir. 2011).

Rule 12(b)(1) permits two forms of attack on a complaint: facial and factual. A facial attack asserts that the allegations in the complaint, even if true, are insufficient to establish subject matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). By

9

contrast, a factual attack on the complaint challenges the veracity of the allegations upon which subject matter jurisdiction depends. *Id.* at 1003.

III. ANALYSIS

The thrust of Plaintiffs' Complaint is disagreement with the state court's opinion in *State ex rel. State Engineer v. United States*, 2018-NMCA-053. While this declaratory judgment action purports to seek straightforward declarations of federal law, in truth it constitutes a collateral attack on a state court order and asks this Court to functionally overrule the state court order outside the normal appeals process. As presented, the Court declines to wade into the state court's ruling and instead views the allegations against and relief sought from these Defendants.

Despite Plaintiffs' detailed forty-three-page Complaint outlining various aspects of federal law and detailing the history of the San Juan River Basin Adjudication, the defendants here are entitled to various forms of immunity that strip this Court of subject matter jurisdiction. For the reasons explained below, the Motions are well taken and are hereby granted. Furthermore, this case is dismissed for lack of subject matter jurisdiction.

"Sovereign immunity . . . presents a threshold question of the district court's subject matter jurisdiction." *Chilcoat v. San Juan County*, --- F.4th ---, --- n.21, 2022 WL 2898790, at *11 (10th Cir. July 22, 2022). The parties assert three types of sovereign immunity: Eleventh Amendment immunity, asserted in the State MTD; federal sovereign immunity, asserted in the USA MTD; and tribal sovereign immunity, asserted in the Navajo MTD. The Court addresses each in turn.

A. *Eleventh Amendment Immunity*

The State MTD, on behalf of Defendants Hamman and Schmidt-Peterson, invokes the Eleventh Amendment as a bar to federal jurisdiction over these defendants. "The Eleventh

Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). "[O]nce effectively asserted[,] [Eleventh amendment] immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Id.* (brackets in original) (quoting *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000)); *see also Elephant Butte Irr. Dist. v. Dept. of the Interior*, 160 F.3d 602, 607 (10th Cir. 1998) (recognizing Eleventh Amendment as bar to federal subject matter jurisdiction); *United States v. Tex. Tech. Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999) (citing similar decisions from several circuits), *cert. denied*, 530 U.S. 1202 (2000). For the reasons explained herein, the Court grants the State MTD and dismisses all claims against Defendants Hamman and Schmidt-Peterson for lack of jurisdiction on the basis of Eleventh Amendment immunity.

Generally, state officials acting in their official capacities are considered to be acting on behalf of the state and immune from unconsented lawsuits under the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). *Ex parte Young* creates an exception to this general rule.[8] In that case, the Supreme Court held the Eleventh Amendment does not bar a federal suit against a state official, acting in their official capacity, which seeks only prospective equitable relief for ongoing violations of federal law, even if the state is immune. *Ex parte Young*, 209 U.S. at 159-60; *see also Milliken v. Bradley*, 433 U.S. 267, 289-90 (1977) (holding claim may proceed in federal court where plaintiff seeks prospective relief to end state officer's ongoing violation of federal law).

---

[8] There are also "two clearly recognized exceptions to the general immunity protections of the Eleventh Amendment: (1) a state may consent to be sued, or (2) Congress may clearly and expressly abrogate the states' immunity." *Elephant Butte*, 160 F.3d at 607. Neither party invoked either exception, so the Court will not discuss these exceptions any further.

11

While *Ex parte Young* expands federal jurisdiction over state action, "the decision whether to apply [it] and allow a suit to proceed in federal court is often less than clear[.]" *Elephant Butte*, 160 F.3d at 608. The Supreme Court in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), a case involving application of *Ex parte Young*, "suggested that if the relief requested involved the adjudication of property interests (like a quiet title action) that 'implicate[ ] special sovereignty interests" and is coupled with far-reaching and invasive relief, the *Ex parte Young* doctrine is inapplicable, and the state should be allowed to respond to the claims against it in its own courts." *Elephant Butte*, 160 F.3d at 609 (quoting *Coeur d'Alene*, 521 U.S. at 281, 287-88.

Courts in the Tenth Circuit apply a four-part test to determine whether a suit is governed by the *Ex parte Young* doctrine:

> First, we must determine whether this is an action against the state officials or against the State of New Mexico itself; second, whether the alleged conduct of the state officials constitutes a violation of federal law, or merely a tortious interference with Plaintiffs' property rights; third, whether the relief Plaintiffs seek is permissible prospective relief or is it analogous to a retroactive award of damages impacting the state treasury; and finally whether the suit rises to the level of implicating "special sovereignty interests."

*Elephant Butte*, 160 F.3d at 609 (internal citations omitted); *Pearlman v. Vigil-Giron*, 71 Fed. Appx. 11, 14-15 (10th Cir. 2003) (quoting same); *Robinson v. Kansas*, 295 F.3d 1183, 1188 (10th Cir. 2002) (applying *Elephant Butte* test).

With respect to Defendant Schmidt-Peterson, the State Defendants argue that the Complaint contains no allegations that Schmidt-Peterson violated federal law. (Doc. 14) at 9. Indeed, the only allegations related to the Interstate Stream Commission seem to be that it has "paid several million dollars for legal services" to the state court judge's son and his law firm "for work on water cases." (Doc. 1) at ¶ 116. Plaintiffs' only response to this argument is a

12

generic statement that "the defendant public officials are violating and failing to enforce numerous federal laws relating to water," and that the "defendants" rely on the New Mexico Court of Appeals' "opinion as one justification for their refusal to enforce federal water laws." (Doc. 42) at 2, 5. The Court agrees with Defendants. Plaintiffs make no concrete allegation that Defendant Schmidt-Peterson, in his official capacity, has violated or is likely to continue violating federal law in any respect. Plaintiffs' generic argument as to "the defendant public officials" lacks the specificity required to fall within the *Ex parte Young* exception to Eleventh Amendment Immunity. Even if the allegation related to the Interstate Stream Commission having paid for legal services constituted a colorable allegation that it violated federal law, sovereign immunity is not waived where the complaint seeks to remedy "past wrongs." *Elephant Butte*, 160 F.3d at 611. Therefore, the State MTD is granted with respect to Defendant Schmidt-Peterson.

The State Defendants make similar arguments as to Defendant Hamman. Plaintiffs' allegations with respect to Defendant Hamman are slightly more robust: Plaintiffs allege the "State Engineer worked in concert with the Navajo Nation and the United States to nullify" a New Mexico state statutory requirement, specifically that the State Engineer must complete a hydrographic survey in any stream system adjudication, NMSA 1978, § 72-4-15, (Doc. 1) at ¶¶ 96-98; the State Engineer "paid several million dollars for legal services" to the state court judge's son and his law firm "for work on water cases," *id.* at ¶ 116; the "Office of the State Engineer has engaged in *ex parte* contacts" with the presiding state judge, *id.* at ¶ 135; and the State Engineer denied equal protection to other water claimants by giving "favorable and expedited treatment" to the Navajo Nation in the Expedited Inter Se case, *id.* at ¶ 136. In response to the State MTD, Plaintiffs state that "[t]he present controversy arises in part because

of an erroneous opinion issued by the New Mexico Court of Appeals in April 2018," and contends that the State Engineer urged the New Mexico Supreme Court to overturn that decision. (Doc. 42) at 5-6.

While Plaintiffs include more factual assertions with respect to Defendant Hamman, the allegations address only past conduct. Even if Plaintiffs' allegations suggest that Defendant Hamman violated federal law in the past, there is no colorable assertion that he will continue to do so in the future. Again, sovereign immunity is not waived to remedy past wrongs. For these reasons, the Court grants the State MTD with respect to Defendant Hamman on the basis of Eleventh Amendment immunity.

B. *Federal Sovereign Immunity*

The USA MTD seeks dismissal based on federal sovereign immunity. The federal Defendants contend Plaintiffs failed to allege any waiver of sovereign immunity and, therefore, the claims must be dismissed based on a lack of subject matter jurisdiction. (Doc. 15). Plaintiffs counter that the McCarran Amendment, the Endangered Species Act, the Clean Water Act, the Safe Drinking Water Act, the Administrative Procedure Act, the Civil Rights Act, and the Fourteenth Amendment all waive the United States' sovereign immunity for purposes of this case. (Doc. 42) at 10-11. While Plaintiffs correctly state that the cited statutes waive sovereign immunity in specified instances, none of those instances are found in this case. For this reason, and as further discussed below, the Court grants the USA MTD and dismisses all claims against the federal Defendants on the basis of sovereign immunity.

"A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). Put another way, a waiver of sovereign immunity for a specified purpose,

such as joining the United States to an adjudication of rights to the use of water of a river system or other sources, *see* 43 U.S.C. § 666, cannot be extended beyond that clearly identified purpose.

The McCarran Amendment does not provide a waiver of sovereign immunity applicable to this case. At the outset, Plaintiffs correctly assert that the McCarran Amendment waives sovereign immunity for the adjudication of water rights of a river system or other sources and also for suits involving "the administration of such rights, where it appears the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit." 43 U.S.C. § 666. Plaintiffs then assert that "the opinion of the New Mexico Court of Appeals has handed administration of water rights to federal officials, in derogation of the authority of state officials." (Doc. 42) at 5. The Court takes no position on what the New Mexico Court of Appeals opinion does or does not purport to do. However, Plaintiffs fail to connect their quarrel with the New Mexico Court of Appeals to the McCarran Amendment: that is, Plaintiffs cannot explain how the instant lawsuit is either a water rights adjudication (it is not) or a suit involving the administration of water rights within the meaning of the McCarran Amendment.

Plaintiffs cursorily invoke additional federal statutes that waive sovereign immunity for specified purposes. *See* (Doc. 42) at 11. Plaintiffs fail to connect these statutes, either in their Response to the Motions to Dismiss or in the Complaint, to the alleged conduct of the federal Defendants and fail to tie these limited waivers of immunity to the impetus for this case.

With respect to Plaintiffs claims that their Fourteenth Amendment rights have been violated, Plaintiffs do not suggest, and the Court cannot discern, any way in which injunctive relief vis-à-vis the federal Defendants would rectify the alleged ills. For example, Plaintiffs contend their due process right to a meaningful hearing at a meaningful time has been denied.

This may be true, but the federal Defendants do not and cannot control when a hearing occurs in a state proceeding.

Because Plaintiffs failed to allege an applicable basis upon which to waive sovereign immunity, the Court grants the USA MTD and dismisses all claims against the federal Defendants for lack of subject matter jurisdiction based on sovereign immunity.

C. *Tribal Sovereign Immunity*

The Navajo MTD seeks dismissal based on tribal sovereign immunity. (Doc. 16). As further explained below, the Court grants the Navajo MTD and dismisses all claims brought against Defendants Shebala and Zeller on the basis of tribal sovereign immunity.

Indian tribes are domestic dependent nations that exercise "inherent sovereign authority over their members and territories." *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1934 (2022) (citing *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991)). "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998) (citing *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering*, 476 U.S. 877, 890 (1986); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512 (1940)). In addition to unequivocal waiver by the tribe or express abrogation by Congress, tribal sovereign immunity may also be pierced for prospective relief against tribal officials according to the *Ex parte Young* doctrine. *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011) ("Today we join our sister circuits in expressly recognizing *Ex parte Young* as an exception not just to state sovereign immunity but also to tribal sovereign immunity.").

As is implied by the application of *Ex parte Young* to tribes, tribal officials sued in their official capacity are protected by tribal sovereign immunity just as much as the tribe itself. *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) (adopting rule that "Defendants in an official-capacity action may assert sovereign immunity" in context of tribal sovereign immunity); *Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir. 1997) ("Tribal immunity may not be evaded by suing tribal officers" and "tribal immunity protects tribal officials against claims in their official capacity.").

Plaintiffs in this case imply the Navajo Defendants are not protected by sovereign immunity in two ways: first, according to *Ex parte Young*; and second, because Congress waived tribal immunity in water adjudications. (Doc. 42) at 4. It is undisputed that the Navajo Nation did not waive its own sovereign immunity in this case.

The Court rejects the second theory. Plaintiffs argue that the McCarran Amendment, 43 U.S.C. § 666, which waives the United States' sovereign immunity in water rights adjudications, also applies to tribes. (Doc. 42) at 4 (citing *United States v. Dist. Ct. In & For Eagle Cnty., Colo.*, 401 U.S. 520 (1971)). That contention lacks support, both in *Eagle County* and elsewhere. *See Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 566 (1983) ("The McCarran Amendment, although it waived United States sovereign immunity in state comprehensive water adjudications, did not waive *Indian* sovereign immunity." (emphasis original)).

As for the first theory, the Court concludes this action does not fall within the auspices of *Ex parte Young*. The Navajo Defendants persuasively argue that the relief sought in this case could not be realized via declaratory judgment or injunction against either Dr. Shebala or Mr. Zeller in their official capacities; rather, the claims run against the Navajo Nation itself and its

17

sovereign interests. (Doc. 16) at 3–4. This, they assert, precludes any invocation of *Ex parte Young* to evade immunity. *Id.* Plaintiffs do not specifically respond to this argument. *See* (Doc. 42) at 4.

Briefly, the Court responds to some of Plaintiffs' arguments. First, Plaintiffs attempt to distinguish *Fletcher*, 116 F.3d 1315, a comprehensive Tenth Circuit precedent cited repeatedly by the Navajo Defendants. Plaintiffs seek to differentiate it by asserting that the issues in that case (re-writing a tribal constitution) were more substantial than the issues in this case (water rights) and therefore this case does not rise to a level deserving sovereign immunity. (Doc. 42) at 4. That argument is unavailing. Sovereign immunity does not operate only with a heightened showing of tribal interests; sovereignty is inherent, and immunity applies unless rebutted. *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) ("[Tribes] remain separate sovereigns pre-existing the Constitution." (citations omitted)); *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1304 (10th Cir. 2001) ("It is settled that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed." (citations omitted)). Plaintiffs' argument that tribal sovereignty is qualified is wrong and borders bad faith.

Plaintiffs go further yet by asserting that the Tenth Circuit has "declined to extend *Fletcher* to other contexts." (Doc. 42) at 4 (citing *Davis v. United States*, 192 F.3d 951 (10th Cir. 1999). This is an incorrect reading of *Davis*, which did not restrict tribal sovereign immunity in any way. Instead, the Tenth Circuit in *Davis* only discussed *Fletcher* regarding the narrow issue of necessary joinder of tribes which enjoy sovereign immunity. *See Davis*, 192 F.3d at 960–961.

Finally, in its briefing, Plaintiffs allege, in a single conclusory statement, that "the Navajo Nation is not in compliance with the Tenth Circuit's opinion in *Pueblo of Santa Ana v. Kelly*, 104 F.3d [1546,] 1550–51 [(1997)]." (Doc. 42) at 4. In that case, the Tenth Circuit held that

under New Mexico law, the Governor, acting unilaterally, lacks the authority to bind the state to compacts with tribes. *Santa Ana*, 104 F.3d at 1558–1559 (referencing *State ex rel. Clark v. Johnson*, 1995-NMSC-048). The Circuit made that decision in the context of 13 tribal gaming compacts signed by Governor Johnson. *Id.* at 1550. Plaintiffs here, in alleging the Navajo Nation is in violation of that opinion, cite only to the legal background section of the opinion. *See id.* at 1550–51. To be generous, Plaintiffs also allege in their Complaint that Governor Richardson signed a water compact with the Navajo Nation in 2010, which perhaps implicates the holding in *Santa Ana*. (Doc. 1) at 22, ¶ 73. But even if it were true that the Navajo Nation and New Mexico still operated under that compact (which is not explicitly alleged), it is not clear to this Court in what way the Navajo Nation could violate the *Santa Ana* holding, nor in what way it relates to sovereign immunity. For this reason, the Court does not consider this argument further.

The Court agrees with the Navajo Defendants. Here, the requested remedy is declaratory judgment stating the meaning of federal water law. (Doc 1) at 42–43. Such a remedy does not necessitate prospective action by or restraint of the individual officials named as Defendants. Instead, any plausible remedy would operate directly on the Navajo Nation and would be an affront to its sovereign interests and water rights. Thus, *Ex parte Young* is an unavailable route around tribal sovereign immunity. The Court is, therefore, deprived of subject matter jurisdiction over the case as applied to the Navajo Defendants. The Court grants the Navajo MTD.

IV.     CONCLUSION

For the reasons explained above, the Court grants each of the Motions to Dismiss based on sovereign immunity and dismisses all claims against the Defendants for lack of subject matter jurisdiction. A separate final judgment will follow.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE